UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-21465-Civ-MORENO
        (13-20230-Cr-MORENO)
MAGISTRATE JUDGE PATRICK A. WHITE

CARLOS ABEL FERNANDEZ,

        Movant,

v.                                              **REPORT OF**
                                        **MAGISTRATE JUDGE**

UNITED STATES OF AMERICA,

        Respondent.

_____/

## I. Introduction

The *pro se* movant, **Carlos Abel Fernandez,** has filed this motion to vacate (Cv-DE#1) with supporting affidavit (Cv-DE#4), pursuant to 28 U.S.C. §2255, challenging the constitutionality of his conviction and sentence for felon in possession of a firearm, entered following a jury verdict in **case no. 13-20230-Cr-Moreno.**

This Cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B),(C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges, S.D. Fla. Admin. Order 2003-19; and, Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the movant's motion (Cv-DE#1) with supporting memorandum (Cv-DE#4), the government's response (Cv-DE#11) to this court's order to show cause, the movant's traverse (Cv-DE#15), and supplements thereto (Cv-DE#s16,20), together with the Presentence Investigation Report ("PSI"), Statement of Reasons ("SOR"), and all pertinent portions of the underlying criminal file

under attack here, including the trial and sentencing transcripts.[1]

## II.  __Claims__

While proceeding *pro se*, movant filed his initial motion (Cv-DE#1), and as best can be discerned, construed liberally in light of <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), he raised the following grounds for relief:

> 1.  He was denied effective assistance of counsel, where his lawyer failed to request funds to retain an expert to support movant's defense at trial. (Cv-DE#1:4,4A).

> 2.  He was denied effective assistance of counsel, where his lawyer failed to argue at sentencing and then raised on appeal that the movant's armed career criminal enhancement was unlawful. (Cv-DE#1:4,4B).

> 3.  Movant's sentence under the Armed Career Criminal Act ("ACCA") is unlawful. (Cv-DE#1:4,4B).

## III.  __Procedural History__

By way of background, the movant was charged with and convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. §924(g)(1) and §924(e), following the entry of a jury verdict. (Cr-DE#3,51). In light of his status as an armed career criminal, pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §924(e), he faced a 15-year minimum mandatory and up to a term of life imprisonment.

---

[1]The undersigned takes judicial notice of its own records as contained on CM/ECF in those proceedings. <u>See</u> <u>Fed.R.Evid</u>. 201.

Prior to sentencing, a PSI was prepared which reveals as follows. Pursuant to U.S.S.G. §2K2.1(a)(2), because the movant committed the offense of conviction, a violation of §922(g)(1) and §924(e), and had two prior convictions of either a crime of violence or a controlled substance offense, the base offense level was set at a level 24. (PSI ¶7). The PSI relied on the following three prior convictions to support the ACCA enhancement: **(1) aggravated battery**, entered in Miami-Dade County Circuit Court, **case no. F92-29997B; (2) aggravated battery on a law enforcement officer,** entered in Miami-Dade County Circuit Court, **case no. F96-23898; and, (3) resisting officer with violence,** entered in Miami-Dade County Circuit Court, **case no. F97-27444.** (PSI ¶¶7,20,31,33). A 4-level increase to the base offense was added because the movant possessed or used the firearm in connection with another felony offense. (PSI ¶8). No adjustment for acceptance of responsibility was given, resulting in a total adjusted offense level 34. (PSI ¶¶13-15).

Next, the probation officer determined the movant had a total of 7 criminal history points, resulting in a criminal history category IV. (PSI ¶35). However, because the movant was considered an armed career criminal, pursuant to U.S.S.G. §4B1.4(c)(2), and since he possessed a firearm or ammunition in connection with either a crime of violence or controlled substance offense, the movant's criminal history category was raised to a level VI. (PSI ¶35). Based on a total offense level 34 and a criminal history category VI, the movant faced 262 months imprisonment at the low end, and 327 months imprisonment at the high end of the guideline range. (PSI ¶65). Statutorily, the movant faced a 15-year minimum term and up to a maximum of life imprisonment for violation of 18 U.S.C. §924(e). (PSI ¶64).

Prior to sentencing, movant filed objections to the PSI,

arguing that he was not subject to an ACCA enhancement. (Cr-DE#59). In support thereof, he maintains that the three prior predicate offenses could not be used to support the enhancement because they were not charged in the indictment nor proven beyond a reasonable doubt. (Id.). Movant recognized, however, that the issue was presently foreclosed by the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219 (1998). (Id.). Movant also argued that his prior 1992, Florida conviction for aggravated battery was not a qualifying predicate offense, because the facts set forth in the PSI were not accurate, and were otherwise insufficient under a modified categorical approach. (Id.). Third, movant objected that he possessed the firearm in connection with a crime of violence since the jury made no such finding at trial; and, as such, the 4-level enhancement under U.S.S.G. §2K2.1(b)(2) was unlawful. (Id.).

Movant appeared for sentencing on January 21, 2014. (Cr-DE#81). At that time, the defense addressed the objections, including argument that the three prior predicate offenses, used to support the ACCA enhancement, as set forth in paragraphs 20, 31, and 33 of the PSI, were not proven nor presented to the jury. (Id.:6). The court overruled the objections, finding he did not believe the law would enable him to look beyond the offense of conviction and consider any facts to determine whether or not the prior conviction qualified as a predicate offense for purposes of the ACCA enhancement. (Id.:6-17). Defense counsel also argued that the movant should receive a 3-level reduction based on acceptance of responsibility. (Id.:24).

Thereafter, the court, found, in pertinent part, as follows:

      Okay. Let me tell you the difficult issue I had. I
had no difficulty dealing with the other objections and
I have so found already and they are preserved for the

record, but I find that the predicate convictions for Armed Career Criminal Act enhancement that increased his minimum term of imprisonment to 15 years pursuant to 18 U.S.C. Section 924(e)(1) is appropriate. The enhancement is appropriate. And I have overruled the objections for the reasons stated and also the enhancement due to a crime of violence because there was a shooting.

To give him an acceptance of responsibility for what the defendant has said would be inconsistent with the findings that what he did was a crime of violence. By the same token, it's a case of a trial where the defendant--I think it was a case that could have been and probably should have been tried.  The top of the guidelines, if I were to give him acceptance of responsibility, would be 262 months. I'm not going to give him acceptance of responsibility, but I recognize that he accepted some responsibility by what he has said here. He shouldn't have done it. He understands that someone could have been shot. It was a question of the moment. He still maintains that he was afraid. I think it's more of a combination. I don't think that's really the case. I think it's mostly he was offended at this, but the other people did have guns. And I think that, coupled with this semi-acceptance of some responsibility, my sentence would be 262 months, irrespective. In other words, I would give him the bottom of the guidelines. I find that the guideline range is 262 to 327 months. And I'm going to give him the bottom of the guidelines for that reason.

If I gave him acceptance of responsibility because of the shooting involved, I would also give him 262 months. I really would, and I've analyzed this right here in front of you.

I know it's a lot of time, but you can't be shooting around because you're offended. And so the sentence is by this Court--it is the judgment of this Court that you, Carlos Fernandez, be committed to the custody of the Bureau of Prison for a period of 21 years and 10 months....

(Id.:50-51; see also Cr-DE#68).

Movant prosecuted a direct appeal, raising multiple challenges to his enhanced sentence under U.S.S.G. §4B1.4(b)(3)(A) and

§2K2.1(b)(6)(B). See United States v. Fernandez, 606 Fed.Appx. 977 (11 Cir. 2015); (Cr-DE#89). On **August 6, 2015,** the Eleventh Circuit Court of Appeals affirmed the movant's sentence in a written, but unpublished opinion. United States v. Fernandez, supra.; (Cr-DE#89). No certiorari review appears to have been filed. Thus, the movant's conviction became final on **Monday, October 5, 2015,**[2] when the 90-day period for seeking certiorari review with the U.S. Supreme Court expired.[3]

Movant returned to this court filing his first §2255 motion, on **April 18, 2016**, after he and handed it to prison authorities for mailing in accordance with the mailbox rule. (Cv-DE#1:9). Absent evidence to the contrary, it is presumed that the §2255 motion was filed on the date executed by the movant and not the date received by the court for filing.

## IV.   Threshold Issues

### A.   Timeliness

In its response, the government does not dispute that the movant's §2255 motion, filed on April 18, 2016, was timely filed

---

[2]Under Fed.R.Civ.P. 6(a)(1), "in computing any time period specified in ... any statute that does not specify a method of computing time ... [the court must] exclude the day of the event that triggers the period[,] count every day, including intermediate Saturdays, Sundays, and legal holidays[, and] include the last day of the period," unless the last day is a Saturday, Sunday, or legal holiday. Where the dates falls on a weekend, the Undersigned has excluded that day from its computation.

[3]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufman, 282 F.3d 1336 (11ᵗʰ Cir. 2002); Wainwright v. Sec'y Dep't of Corr's, 537 F.3d 1282, 1283 (11ᵗʰ Cir. 2007)(conviction final under AEDPA the day U.S. Supreme Court denies certiorari, and thus limitations period begins running the next day). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. Sup.Ct.R. 13; see also, Close v. United States, 336 F.3d 1283 (11ᵗʰ Cir. 2003).

under §2255(f)(1) and (f)(3) because: (1) it was filed within one year of the time the movant's conviction became final on direct appeal on October 5, 2015; and, (2) it was filed within a year of the June 26, 2015 Supreme Court decision in <u>Johnson v. United States</u>, ___ U.S. ___, 135 S.Ct. 2551 (2015), made retroactively applicable to cases on collateral review by <u>Welch v. United States</u>, ___ U.S. ___, ___, 136 S.Ct. 1257, 1264-65 (2016). As will be recalled, movant's conviction became final on October 5, 2015. The <u>Johnson</u> decision was issued on June 26, 2015. The movant filed his §2255 motion on April 18, 2016, less than one year from either triggering event. Thus, as argued correctly by the government, this federal petition is timely filed.

### B.  Procedural Default

The government, however argues, that the movant's challenge to the constitutionality of his ACCA sentence is procedurally defaulted from review because he failed to preserve the issue at sentencing and then on appeal. (DE#11:7).

As a general matter, a criminal defendant must assert an available challenge to a conviction or sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding. <u>Greene v. United States</u>, 880 F.2d 1299, 1305 (11th Cir. 1989). It is well-settled that a habeas petitioner can avoid the application of the procedural default rule by establishing objective cause for failing to properly raise the claim and actual prejudice resulting from the alleged constitutional violation. <u>Murray v. Carrier</u>, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (citations omitted); <u>Spencer v. Sec'y, Dep't of Corr.</u>, 609 F.3d 1170, 1179-80 (11th Cir. 2010); <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004).

To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). Cause for not raising a claim can be shown when a claim "is so novel that its legal basis was not reasonably available to counsel." Bousley v. United States, 523 U.S. 614, 622 (1998); see also, Reed v. Ross, 468 U.S. 1, 16 (1984). Further, a meritorious claim of ineffective assistance of counsel can constitute cause. See United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000). Ineffective assistance of counsel claims, however, are generally not cognizable on direct appeal and are properly raised by a §2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).[4] To show prejudice, a petitioner must show actual prejudice resulting from the alleged constitutional violation. United States v. Frady, 456 U.S. 152, 168, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); Wainwright v. Sykes, 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed. 2d 594 (1977).

If a petitioner is unable to show cause and prejudice, yet another avenue existing for obtaining review of the merits of a procedurally defaulted claim. Under exceptional circumstances, a prisoner may obtain federal habeas review of a procedurally defaulted claim if such review is necessary to correct a fundamental miscarriage of justice, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 495-96; see also Herrera

---

[4]In this case, claim 3 could have been, but was not raised on direct appeal. Construing movant's arguments liberally, he appears to fault counsel for failing to preserve the issue at sentencing and then raise the issue on appeal. Consequently, the claims have been analyzed under Strickland to ascertain whether he is entitled to relief sufficient to circumvent the procedural bar.

v. Collins, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L. Ed. 2d 203 (1993); Kuhlmann v. Wilson, 477 U.S. 436, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986). The actual innocence exception is "exceedingly narrow in scope" and requires proof of actual innocence, not just legal innocence. Id. at 496; see also Bousley, 523 U.S. at 623 ("'actual innocence' means factual innocence, not mere legal insufficiency"); Sawyer v. Whitley, 505 U.S. 333, 339 (1992)("the miscarriage of justice exception is concerned with actual as compared to legal innocence").

Where the Supreme Court explicitly overrules well-settled precedent and gives retroactive application to that new rule after a litigant's direct appeal, "[b]y definition" a claim based on that new rule cannot be said to have been reasonably available to counsel at the time of the direct appeal. Reed v. Ross, 468 U.S. 1, 17 (1984). That is precisely the circumstance here. The Supreme Court in Johnson overruled precedent, announced a new rule, and then gave retroactive application to that new rule.

When judicial economy dictates, where the merits of the claims may be reached and readily disposed of, judicial economy has dictated reaching the merits of the claim while acknowledging the procedural default and bar in the alternative.[5] See Lambrix v. Singletary, 520 U.S. 518 (1997). See also Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999)(stating that judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner and the procedural bar issues are complicated), cert. denied, 528 U.S. 846 (1999); Chambers v. Bowersox, 157 F.3d 560, 564 n. 4 (8th Cir. 1998)(stating that "[t]he

---

[5]Even if certain claims are technically unexhausted, the Court has exercised the discretion now afforded by Section 2254, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See Johnson v. Scully, 967 F.Supp. 113 (S.D.N.Y. 1996); Walker v. Miller, 959 F.Supp. 638 (S.D. N.Y. 1997; Duarte v. Miller, 947 F.Supp. 146 (D.N.J. 1996).

simplest way to decide a case is often the best.").

## V.  <u>General Legal Principles</u>

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to §2255 are extremely limited. A prisoner is entitled to relief under §2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. <u>See</u> 28 U.S.C. §2255(a); <u>McKay v. United States</u>, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). The "fundamental miscarriage of justice" exception recognized in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent ...."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. <u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. <u>Nyhuis</u>, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether

a particular claim has been previously raised. <u>Sanders v. United</u> <u>States</u>, 373 U.S. 1, 16, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations ... or supported by different legal arguments ... or couched in different language ... or vary in immaterial respects").

Post-conviction relief is available to a federal prisoner under §2255 where "the sentence was imposed in violation of the Constitution or laws of the United States, or ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law." 28 U.S.C. §2255(a); <u>see</u> <u>Hill v. United States</u>, 368 U.S. 424, 426-27 (1962). A sentence is "otherwise subject to collateral attack" if there is an error constituting a "fundamental defect which inherently results in a complete miscarriage of justice." <u>United States v.</u> <u>Addonizio</u>, 442 U.S. 178, 185 (1979); <u>Hill v. United States</u>, 368 U.S. at 428.

## **Law re Ineffective Assistance of Counsel**

The movant raises multiple claims challenging counsel's effectiveness during various stages of the underlying criminal proceedings under attack here. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. <u>Strickland v. Washington</u>, 466 U.S. 668, 684-85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When assessing counsel's performance under <u>Strickland</u>, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id</u>. at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance ...." <u>Burt v. Titlow</u>, ____ U.S. ____, 134 S.Ct. 10, 18, 187 L.Ed.2d 348

(2013).

To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) that he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 687-88; Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). The standard is the same for claims challenging appellate counsel's effectiveness. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987); Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991)(quoting Strickland, 466 U.S. at 688).

To establish deficient performance, the movant must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. Strickland, supra. See also Cummings v. Sec'y for Dep't of Corr's, 588 F.3d 1331, 1356 (11th Cir. 2009)("To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place.")(internal quotation marks omitted). The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc), cert. den'd, 531 U.S. 1204 (2001)(quoting Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. Id. at 1317. The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Chandler, 218 F.3d

at 1313. Instead the test is whether what counsel did was within the wide range of reasonable professional assistance. Id. at 1313 n.12.

Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 689. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A court need not address both prongs of Strickland if the defendant makes an insufficient showing on one of the prongs. Stickland, 466 U.S. at 697. See also Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004). Further, counsel is not ineffective for failing to raise non-meritorious issues. Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001). Moreover, counsel is not required to present every non-frivolous argument. Dell v. United States, 710 F.3d 1267, 1282 (11th Cir. 2013).

A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. No lawyer can be expected to have

13

considered all of the ways. <u>Chandler</u>, 218 F.3d at 1316.

Since the sentence ultimately imposed upon the defendant is a
"result of the proceeding," in order for a petitioner to satisfy
the prejudice-prong of <u>Strickland</u>, he must demonstrate that there
is a reasonable probability that his sentence would have been
different but for his trial counsel's errors. <u>See</u> <u>United States v.</u>
<u>Boone</u>, 62 F.3d 323, 327 (10th Cir.)(rejecting the defendant's claim
that counsel was ineffective in part because the defendant failed
to show "that the resulting sentence would have been different than
that imposed under the Sentencing Guidelines"), <u>cert</u>. <u>denied</u>, 516
U.S. 1014 (1995). Thus, the <u>Strickland</u> test applies to claims
involving ineffective assistance of counsel during the punishment
phase of a non-capital case. <u>See</u> <u>Glover v. United States</u>, 531 U.S.
198 (2001)(holding "that if an increased prison term did flow from
an error [of counsel] the petitioner has established <u>Strickland</u>
prejudice"); <u>Spriggs v. Collins</u>, 993 F.2d 85, 88 (5th Cir. 1993).
If the petitioner cannot meet one of <u>Strickland</u>'s prongs, the court
does not need to address the other prong. <u>Strickland</u>, 466 U.S. at
687, 104 S.Ct. at 2064. <u>See also</u> <u>Butcher v. United States</u>, 368 F.3d
1290, 1293 (11th Cir. 2004).

Furthermore, a §2255 movant must provide factual support for
his contentions regarding counsel's performance. <u>Smith v. White</u>,
815 F.2d 1401, 1406-07 (11th Cir.1987). Bare, conclusory allegations
of ineffective assistance are insufficient to satisfy the
<u>Strickland</u> test. <u>See</u> <u>Boyd v. Comm'r, Ala. Dep't of Corr's</u>, 697 F.3d
1320, 1333-34 (11th Cir. 2012); <u>Garcia v. United States</u>, 456
Fed.Appx. 804, 807 (11th Cir. 2012) (<u>citing</u> <u>Yeck v. Goodwin</u>, 985
F.2d 538, 542 (11th Cir. 1993)); <u>Wilson v. United States</u>, 962 F.2d
996, 998 (11th Cir. 1992); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559
(11th Cir. 1991); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir.
1990)(<u>citing</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74, 97 S.Ct. 1621,

14

52 L.Ed.2d 136 (1977)); <u>United States v. Ross</u>, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d at 1099 (<u>quoting</u> <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

## Law re Armed Career Criminal Act

Ordinarily, where as here, the movant is convicted of felon in possession of a firearm, the maximum term of imprisonment is ten years. <u>See</u> 18 U.S.C. §922(g)(1) and §924(a)(2). However, pursuant to the Armed Career Criminal Act ("ACCA"), a felon in possession of a firearm, who has at least three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another," is subject to a 15-year mandatory minimum term of imprisonment, and up to a term of life imprisonment. <u>Id</u>. at §924(e)(1).

The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that: (i) has as an element the use, attempted use, or threatened use of

physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, **or otherwise involves conduct that presents a serious potential risk of physical injury to another**. Id. at §924(e)(2)(B) (emphasis added). Subpart (i) of this definition is often referred to as the "elements clause." Subpart (ii) has two components: the first nine words constitute the "enumerated offense clause," and the last 15 words, which are emphasized above, are referred to as the "residual clause." See Mays v. United States, 817 F.3d 728, 730-31 (11th Cir. 2016).

On June 26, 2015, the Supreme Court held, in Johnson v. United States, ____ U.S. _____, 135 S.Ct. 2551 (2015), that the residual clause of §924(e)(2)(B)(ii), referring to a felony that "presents a serious potential risk of physical injury to another," is unconstitutionally vague; and as such, imposing an increased sentence under the residual clause violates the Constitution's guarantee of due process, because it creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to qualify as a violent felony. Johnson, __ U.S. at ___, ___ 135 S. Ct. at 2557-58, 2563. However, the Johnson Court, specifically did not call into question the application of either the elements or the enumerated crimes clause. Id. at 2563. Ten months later the Supreme Court held, in Welch v. United States, that Johnson announced a new substantive rule that applies retroactively to cases on collateral review. Welch, ___ U.S. ___, _____, 136 S. Ct. 1257, 1264-65 (2016).

## VI. Discussion

### A. ACCA Enhancement

In **claims 2 and 3**, movant challenges his enhanced ACCA

16

sentence. He faults counsel for failing to raise the issue that the enhancement, predicated on the ACCA's residual clause was void for vagueness, and as such, his enhanced sentence was unlawful.

As will be recalled, pursuant to U.S.S.G. §2K2.1(a)(2), because the movant committed the offense of conviction, a violation of §922(g)(1) and §924(e), and had two prior convictions of either a crime of violence or a controlled substance offense, PSI enhanced movant's sentence as an ACCA. (PSI ¶7). The PSI noted that the movant's three prior convictions qualified as predicate offenses to support the ACCA enhancement, as follows: **(1) aggravated battery**, entered in Miami-Dade County Circuit Court, **case no. F92-29997B; (2) aggravated battery,** entered in Miami-Dade County Circuit Court, **case no. F96-23898; and, (3) resisting a law enforcement officer with violence and battery on a law enforcement officer,** entered in Miami-Dade County Circuit Court, **case no. F97-27444.** (PSI ¶¶7,20,31,33) (emphasis added).

Careful review of the PSI, together with the sentencing transcript (Cr-DE#81), reveals that the court relied upon the foregoing three prior convictions as predicate offenses to support the ACCA enhancement. However, the court neither explicitly nor implicitly indicated at sentencing upon which ACCA clause it relied in applying the ACCA enhancement. The PSI is also silent on the issue, merely recognizing that the movant is an armed career criminal under the provisions of §924(e) (PSI ¶7).

Thus, it must be determined whether, in light of <u>Johnson</u>, the movant's prior convictions no longer qualify as predicate offenses to support the ACCA sentencing enhancement under an analysis based on the present state of the law. In other words, to support an ACCA enhanced sentence, movant must have three qualifying predicate offenses which constitute felony convictions for crimes of violence

or serious drug offenses.

When applying §924(e), courts should generally only look to the facts of conviction and the elements of the prior statute of conviction, or to the charging documents and jury instructions, but not the facts of each of defendant's prior conduct. See Taylor v. United States, 495 U.S. 575, 600-602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1999). With the sole exception of convictions obtained in violation of the right to counsel, a defendant has no right to challenge the validity of previous state convictions in his federal sentencing proceeding when such convictions are used to enhance a sentence under the ACCA. Custis v. United States, 511 U.S. 485, 487 (1994).

Turning to the Armed Career Criminal Act ("ACCA"), it provides an enhanced sentencing for individuals who violate §922(g) and have "three previous convictions for a violent felony, serious drug offense, or both, committed on occasions different from one another...." 18 U.S.C. §924(e)(1). Pertinent to this case, the ACCA defines "violent felonies" as any crime punishable by imprisonment for a term exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, ***or otherwise involves conduct that presents a serious potential risk of physical injury to another....***

18 U.S.C. §924(e)(2)(B) (emphasis added).

Subsection (e)(2)(B)(i) is known as the "elements clause," the first portion of subsection (e)(2)(B)(ii) is known as the

18

"enumerated crimes clause," and the last portion of Section (B)(ii), in bold type above, is known as the "residual clause."

On June 26, 2015, the United States Supreme Court struck down the italicized clause, commonly known as the residual clause, as a violation of the Fifth Amendment's guarantee of due process. See Johnson, 576 U.S. ___, ____, 135 S.Ct. 2551, 2557 (2015). Specifically, the Supreme held that the ACCA's residual clause violated due process because it violated "[t]he prohibition of vagueness in criminal statutes." 135 S.Ct. at 2556-2557. The Supreme Court further explained that the vagueness doctrine "appl[ies] not only to statutes defining elements of crimes, but also to statutes fixing sentences." Id. at 2557. The ACCA defines a crime and fixes a sentence. See 18 U.S.C. §924(e). In other words, Johnson "narrowed the class of people who are eligible for" an increased sentence under ACCA. In re Rivero, 797 F.3d 986 (11th Cir. 2015)(citing Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253, 1278 (11th Cir. 2013)).

However, the Supreme Court in Johnson did not invalidate ACCA's elements clause or enumerated crimes clause. Johnson, 135 S.Ct. at 2563 ("Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."). On April 18, 2016, the Supreme Court announced that Johnson is retroactively applicable to cases on collateral review. Welch v. United States, 136 S.Ct. 1257 (2016).

To determine whether the movant's prior predicate offenses still qualify as predicate offenses to support the ACCA enhancement, the court is mindful that it must only examine the elements of the offenses and not the movant's specific conduct in determining whether the prior convictions qualify as predicate

19

offenses for purposes of the ACCA. See United States v. Chitwood, 676 F.3d 971, 976-77 (11 Cir. 2012)(describing the categorical approach).

**Aggravated Battery Conviction**. As will be recalled, the movant had a prior Florida conviction for aggravated battery, entered in Miami-Dade County, Circuit Court, Case No. F92-29997. (PSI ¶31). Movant entered a *nolo contendere* plea to aggravated battery, as a lesser offense of attempted second degree murder. (DE#11:Ex.2:Sentence).

The Eleventh Circuit has held that Florida's aggravated battery offense, a violation of Fla.Stat. §784.021, categorically qualifies as a predicate offense under the ACCA's elements clause. See Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328, 1337-38 (11th Cir. 2013)**,** abrogated on other grounds by, Johnson v. United States, ___ U.S. ___, ___, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015); see also In re Rogers, 825 F.3d 1335, 1341 (11th Cir. 2016)(denying motion for leave to file second or successive §2255 motion on the basis that Turner is "binding precedent [that] clearly classifies [aggravated battery' as elements clause offense." Consequently, the foregoing predicate offense was properly considered and included as one of the qualifying prior convictions to support the ACCA enhancement. Thus, movant cannot establish deficient performance or prejudice under Strickland arising from counsel's failure to raise this nonmeritorious argument either at sentencing or on direct appeal. Relief on this basis must be denied.

**Aggravated Battery on a Law Enforcement Officer.** The PSI noted that movant had a second predicate offense, entered in Miami-Dade County Circuit Court, Case No. F96-23898, for aggravated battery on a law enforcement officer, in violation of Fla. Stat. §784.03 and §784.07(2)(D). (PSI ¶31).

Under <u>Johnson v. United States</u>, 559 U.S. at 136-37 (2010), a
Florida conviction for battery under §784.03 is not categorically
a violent felony because the elements of that offense are in the
disjunctive and the government can prove a battery in one of three
ways, that the defendant (1) intentionally caused bodily harm,
(2) intentionally struck the victim, or merely (3) actually and
intentionally touched the victim. <u>See also</u> <u>United States v. Hill</u>,
799 F.3d 1318, 1323 (11 Cir. 2015). Since the Florida statute is
divisible, the modified categorical approach is used to determine
if the record establishes under which version of the statute the
movant was convicted. <u>See</u> <u>Mathis v. United States</u>, ___ U.S. ___,
136 S. Ct. 2243 (2016); <u>see also</u>, <u>Descamps v. United States</u>, __
U.S. __, 133 S.Ct. 2276, 2284 (2013).

As applied here, when considering the <u>Shepard</u> documents,[6] the
Information in Miami-Dade County Circuit Court, Case No. F96-23898,
reveals that the movant was charged with and convicted of
aggravated battery on a law enforcement officer causing great
bodily harm, permanent disability, or permanent disfigurement, a
first degree felony, in violation of <u>Fla.Stat</u>. §784.03 and
§784.07(2)(d)(1996). In light of the foregoing, aggravated battery
on a corrections officer, under Florida law, constitutes a crime of
violence for purposes of an ACCA enhancement because it requires a
finding of an intentional striking causing great bodily harm, etc.,
and not just a mere touching. Therefore, this predicate offense
was also properly considered when determining movant's ACCA status.
Movant has not demonstrated here deficient performance or prejudice
under <u>Strickland</u> arising from counsel's failure to pursue this

---

[6]In <u>Shepard v. United States</u>, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205
(2005), the Supreme Court held that a sentencing court could examine only a
limited category of documents in determining whether a prior guilty plea
constituted a "burglary," and thus a "violent felony," under the Armed Career
Criminal Act ("ACCA").  See <u>id.</u> at 16, 125 S.Ct. 1254.

argument either at sentencing or on appeal. He is thus not entitled to relief on this basis.

**Resisting Arrest with Violence.** The PSI noted that movant had a third predicate offense, entered in Miami-Dade County Circuit Court, Case No. F97-27444, for resisting arrest with violence, in violation of <u>Fla. Stat</u>. §843.01. (PSI ¶33).

The Eleventh Circuit has held that a defendant's prior conviction for a Florida felony of resisting arrest with violence constitutes a violent felony under the elements clause of the ACCA. <u>See</u> <u>United States v. Romo-Villalobos</u>, 674 F.3d 1246, 1251 (11th Cir. 2012); <u>United States v. Hill</u>, ___ F.3d ____, 2015 WL 5023791 (11th Cir. 2015)[7] (affirming <u>Romo-Villalobos</u> in that "resisting an officer with violence categorically qualifies as a violent felony under the elements clause of the ACCA."); <u>see also</u>, <u>United States v. Telusme</u>, 655 Fed. Appx. 743, 746 (11th Cir. July 8, 2016)(unpublished); <u>United States v. Antunes-Rivera</u>, 659 Fed.Appx. 538, 540, (11th Cir. Aug. 10, 2016)(unpublished).

Given the foregoing, the movant cannot establish deficient performance or prejudice arising from counsel's failure to challenge this predicate offense used to support his ACCA enhancement.

Under the totality of the circumstances present here, since the movant had at least three prior predicate offenses that were crimes of violence, he was properly enhanced as an armed career

---

[7]Florida's intermediary courts have held that violence is a necessary element of the offense. <u>See</u> <u>Rawlings v. State</u>, 976 So.2d 1179, 1181 (Fla. 2008) ("[V]iolence is a necessary element of the offense [of resisting an officer with violence]."); <u>see also</u> <u>Walker v. State</u>, 965 So.2d 1281, 1284 (Fla. 2007) ("[R]esisting arrest with violence is a felony that involves the use or threat of physical force or violence....")(<u>quoting</u> <u>Watson v. State</u>, 749 So.2d 556, 556 (Fla. 2000)).

criminal. Movant has thus shown neither deficient performance nor prejudice arising from counsel's failure to preserve or otherwise further pursue this issue at sentencing, as suggested, much less challenge the issue on direct appeal. See Strickland v. Washington, 466 U.S. 668 (1984) and Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). Consequently, movant is entitled to no relief on **claims 2 and 3** of this federal petition.

### B.   Remaining Claim

In **claim 1,** petitioner asserts that counsel was ineffective, where his lawyer failed to request funds to retain an expert to support movant's defense at trial. (Cv-DE#1:4,4A). According to the movant, bullets and bullet fragments, purportedly shot from the patrons of a club, were found inside the front doorway of the club and in a light fixture inside the club. (DE#4). Movant claims that an expert would have confirmed that the bullets were fired from the patron guns, who fired at the movant first. (Id.:2). Movant states he told counsel he did not have the funds to secure an expert, but claims he learned once he arrived at his facility of confinement that counsel could have petitioned the court for the costs associated with retaining an expert. (Id.). Movant also argues that the expert could have helped defeat the prosecution's closing argument that there was no evidence to establish that the patrons at the club fired their guns first at the movant; and, as a result, movant felt he was in imminent danger and thus justified in accessing a firearm. (Id.).

Decisions whether to call a particular witness or cross-examine certain witnesses are generally questions of trial strategy.  See  United States v. Costa, 691 F.2d 1358 (11 Cir. 1982). However, where counsel failed to investigate and interview promising witnesses, and therefore "ha[s] no reason to believe they

23

would not be valuable in securing [defendant's] release," counsel's inaction constitutes negligence, not trial strategy. <u>Workman v. Tate</u>, 957 F.2d 1339, 1345 (6th Cir. 1992)(<u>quoting</u> <u>United States ex rel. Cosey v. Wolff</u>, 727 F.2d 656, 658 n.3 (7th Cir. 1984)). Nevertheless, strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. <u>Strickland v. Washington</u>, 466 U.S. at 690-91.

In this case, the movant was charged with and found guilty of being a felon in possession of a firearm, following a jury verdict. The facts adduced at trial, and as succinctly summarized by the Eleventh Circuit in its opinion affirming the conviction on direct appeal, reveals as follows:

> On January 6, 2012, Mr. Fernandez--who had previously been convicted of several felonies--was working as the assistant manager of an adult entertainment club in Miami, Florida. That night he grabbed a loaded .40 caliber pistol from the club manager's locked safe and fired shots outside the club. Mr. Fernandez grabbed the pistol after a violent altercation took place outside the club (a group of men had attempted to enter without paying the entrance and parking fees). Video taken during the incident showed Mr. Fernandez firing the gun, and bullet casings from the club parking lot matched the manager's .40 caliber gun....

> At trial, Mr. Fernandez maintained he acted in self defense. The district court instructed the jury that if he found beyond a reasonable doubt that "[Mr. Fernandez] committed the acts charged in the indictment,...[it] must then consider whether [Mr. Fernandez] should nevertheless be found 'not guilty' because his actions were justified by duress or coercion" by "a preponderance of the evidence." The jury did not find that Mr. Fernandez acted in self defense, and returned a guilty verdict on the felon in possession charge.

United States v. Fernandez, 600 Fed.Appx. 977, 978 (11 Cir. 2015); (Cr-DE#89).

Evidence at trial also established that when the patrons attempted to enter the club without paying, the bouncer at the front door hustled all of the club's employees back into the club and locked the front door. (Cr-DE#80:78-81). Shortly thereafter, the bouncer heard a gunshot. (Id.). Meanwhile, the movant, who had been at the entrance, retreated inside the club, and was observed with a bloody face. (Cr-DE#79:163,182; Cr-DE#79:186). The movant went directly to the club's office, where he then retrieved the manager's loaded .40 caliber pistol from a locked safe. (Id. at 164-65,183-84,201-02,211-12). Later, the movant advised his manager that "there was a situation outside and he needed to take action." (Id.:212).

After getting the firearm from the office safe, the movant kicked open the back door of the club, and proceeded towards the club's parking lot where two men were sitting in a car. (Id.:165,185,188; Cr-DE#80:23). As movant approached the vehicle, the men inside the car crouched into a position as if to stay out of the line of gunfire. Meanwhile, someone fired several shots at the movant, grazing his arm. (Cr-DE#79:169-69,185,187-88,240-41; Cr-DE#80:86-87). Movant retreated back inside the club, and then left the area shortly thereafter. (Cr-DE#79:190,195,214). Bullet casings found in the parking lot matched the type of bullets used in the manager's .40 caliber gun. (Cr-DE#80:4-5,69).

At trial, the parties stipulated that the firearm, a GX2, was a firearm, as defined for purposes of 18 U.S.C. §922(g), that the firearm had previously traveled in interstate commerce, and that the movant had previously been convicted of a felony. (Cr-DE#79:147-48).

Fernandez did not testify at trial. (Cr-DE#80:140). However, he called a defense witness, Freddie Lee McIntosh, a bouncer at the club, who testified that on the evening in question, some individuals arrived at the club and refused to pay for parking or the club's admission fee. (Cr-DE#80:78-79). The bouncer at the front door and other club personnel ushered those individuals outside the club where the fight started. (Cr-DE#80:80). The bouncer pushed the club employees back into the club and locked the door. (Cr-DE#80:81,83). Shortly thereafter, gunfire was heard outside the door of the club. (Id.:81). McIntosh drove the movant away from the scene, intending to take him to a hospital for treatment, but when movant realized his wound was just a "graze," McIntosh dropped movant off somewhere in Opa Locka. (Id.:86-87).

To prove that the movant violated §922(g)(1), the government had to show (1) that movant knowingly possessed a firearm or ammunition, (2) that movant was a convicted felon, and (3) that the firearm or ammunition was in or affecting interstate commerce. United States v. Green,842 F.3d 1299, 1305 (11th Cir. 2016) (citing United States v. Palma, 511 F.3d 1311, 1315 (11th Cir. 2008)). Given the evidence adduced at trial, the movant has not demonstrated either deficient performance or prejudice arising from counsel's failure to secure an expert to support movant's self defense theory at trial. Here, movant has not provided any affidavit from an expert demonstrating that he or she would have testified as proffered. Even if the expert had testified as suggested, the evidence more than sufficiently supports the offense of conviction. Therefore, counsel was not ineffective for failing to pursue this nonmeritorious claim. Relief must therefore be denied on this claim.

Alternatively, it is well settled that a movant must argue his claims. Fils v. City of Aventura, 647 F.3d 1272, 1284 (11th

Cir.2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by parties."). That includes citation to the record:

> [A]ll of these principles of law would mean nothing if district courts were required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface in his petition. Making district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him. *Cf. Adler v. Duval County School Board,* 112 F.3d 1475, 1481 n. 12 (11th Cir. 1997) (noting in a civil case that, absent plain error, "it is not our place as an appellate court to second guess the litigants before us and grant them relief ... based on facts they did not relate."); *Johnson v. City of Fort Lauderdale,* 126 F.3d 1372, 1373 (11th Cir. 1997)("[W]e are not obligated to cull the record ourselves in search of facts not included in the statements of fact."). The Seventh Circuit memorably said that appellate judges "are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991). Likewise, district court judges are not required to ferret out delectable facts buried in a massive record, like the one in this case, which was more than 25,000 pages of documents and transcripts.

See <u>Chavez v. Sec'y Fla. Dep't of Corr's</u>, 647 F.3d 1057, 1059-60 (11th Cir. 2011).

These combined requirements mean that movant must construct his claims. Here, movant has failed to provide any objective evidence or point to any evidence that retaining an expert would have changed the outcome of his trial, resulting in an acquittal. Given this court's large habeas docket, the court should not be required to conduct a scavenger hunt or mine through movant's record to find the facts in support thereof. Here, movant does not identify or name an expert that would have testified as suggested,

nor did the movant allege any such expert would have been available to testify at trial.

Further, movant's post-trial, self-serving affidavit, such as the one filed herein is viewed with extreme suspicion. See Drew v. Scott, 28 F.3d 460, 462-63 (5 Cir.), cert. den'd, 512 U.S. 1266 (1994). See also May v. Collins, 955 F.2d 299, 314 (5 Cir. 1992) and cases cited therein, cert. den'd, 504 U.S. 901 (1992)(when faced with recanting affidavits, trial court may make credibility choice in favor of trial testimony without taking additional live testimony).

Because movant has not provided any evidence that an expert would have testified as suggested, and given the fact that the movant has not shown that the movant's self-defense at trial would have succeeded, but for counsel's purported deficiency, the movant cannot prevail on this claim, failing to meet the second prejudice prong of Strickland. No deficient performance or prejudice in this regard has been established. See Strickland, supra; United States v. Costa, 691 F.2d 1358 (11th Cir. 1982); Coco v. United States, 569 F.2d 367 (5th Cir. 1978). Decisions whether to call a particular witness or not to cross-examine certain witnesses are generally questions of trial strategy. See Dorsey v. Chapman, 262 F.3d 1181, 1186 (11 Cir. 2001)(holding that petitioner did not establish ineffective assistance based on defense counsel's failure to call expert witness for the defense in that counsel's decision to not call the expert witness was not so patently unreasonable a strategic decision that no competent attorney would have chosen the strategy). See also United States v. Costa, 691 F.2d at 1364.

Additionally, the movant is again reminded that he may not raise for the first time in objections to the undersigned's Report any new arguments or affidavits to support these claims. Daniel v.

<u>Chase Bank USA, N.A.</u>, 650 F.Supp.2d 1275, 1278 (N.D. Ga. 2009)(<u>citing</u> <u>Williams v. McNeil</u>, 557 F.3d 1287 (11th Cir. 2009). To the extent the movant attempts to do so, the court should exercise its discretion and decline to consider the argument. <u>See</u> <u>Daniel</u>, <u>supra</u>; <u>See</u> <u>Starks v. United States</u>, 2010 WL 4192875 at *3 (S.D. Fla. 2010); <u>United States v. Cadieux</u>, 324 F.Supp. 2d 168 (D.Me. 2004). This is so because "[P]arties must take before the magistrate, 'not only their best shot but all of the shots.'" <u>See</u> <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987)(<u>quoting</u> <u>Singh v. Superintending Sch. Comm.</u>, 593 F.Supp. 1315, 1318 (D.Me. 1984)).

## VII.   <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." <u>See</u> Rule 11(a), Rules Governing §2255 Proceedings for the United States District Courts. A §2255 movant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §2253(c)." <u>See</u> <u>Fed.R.App.P</u>. 22(b)(1). Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. <u>See</u> 28 U.S.C. §2255-Rule 11(b).

However, "[A] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. §2253(c)(2). To make a substantial showing of the denial of a constitutional right, a §2255 movant must demonstrate "that reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-37 (2003) (citations and quotation marks omitted); <u>see also</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001).

After review of the record in this case, the Court finds the movant has not demonstrated that he has been denied a constitutional right or that the issue is reasonably debatable. <u>See</u> <u>Slack</u>, 529 U.S. at 485; <u>Edwards v. United States</u>, 114 F.3d 1083, 1084 (11th Cir. 1997). Consequently, issuance of a certificate of appealability is not warranted and should be denied in this case. Notwithstanding, if movant does not agree, he may bring this argument to the attention of the Chief Judge in objections.

## VIII. <u>Conclusion</u>

Based on the foregoing, it is recommended that this motion to vacate be DENIED, that no certificate of appealability issue, and the case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 23rd day of May, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Martin Alan Feigenbaum, Esquire
     Attorney for Movant
     P.O. Box 545960
     Surfside, FL 33154-9998
     Email: Miamivicelaw@aol.com

```
Francis Ines Viamontes, AUSA
United States Attorney's Office
Criminal Division/Major Crimes
500 E. Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Email: Francis.Villamontes@usdoj.gov
```